319-0115 Ken's Beverage, Inc. Appellant v. Michelle P. Wood and Illinois Department of Employment Security Review Board Appellee. Okay, gentlemen, are you prepared for your oral argument? Yes, your honor. Okay, this is correct. Okay, it's Guevara, am I correct? It's Guevara, yes. Guevara, Mr. Guevara, you may proceed. Thank you, your honor. Greg Guevara for the appellant, Ken's Beverage. May it please the court. This case has significant public policy implications affecting both an employer's responsibility to provide an employee with notice of its reasonable rules and employment expectations, as well as an employer's burden to present evidence in unemployment compensation proceedings before the Illinois Department of Security. If allowed to stand, your honors, this decision will undermine an employer's ability to rely upon previously documented misconduct in making employment termination decisions, will require employers after providing a final written warning to provide further additional written warnings before making such decisions, and unless this holding is reversed, this decision will undermine the important public policy favoring the efficiency and informality of particularly proceedings before the Illinois Department of Employment Security. The review board made three fundamental errors in this case, your honors, each of which warrants reversal. First, the review board clearly erred in failing to consider the entire record of Ms. Wood's documented misconduct in determining whether she engaged in misconduct under the app. Second, the review board clearly erred by stating that Ken's Beverage was required to provide additional written warnings to Ms. Wood even after she had received multiple prior warnings, including a final written warning before her termination. And third, the review board clearly erred in faulting Ken's Beverage for failing to call additional witnesses with personal knowledge of the circumstances relating to her termination, even though the record included two fact witnesses with direct personal knowledge of those circumstances in all of her previously documented written warnings. Before I address each of these errors, let me give a brief overview of the facts of the case. The appellant, Ken's Beverage, or KBI, is a nationwide distributor, a beverage distributor located in Plainfield. Of the claimant, Michelle Wood was employed by KBI until March 1st of 2018, most recently as a dispatch supervisor. During her term, Ms. Wood received a number of written warnings relating to insubordination and rude or disrespectful conduct towards co-workers and managers, including swearing at co-workers. One of those violations included a three-day suspension for insubordination. On July 5th of 2017, Ms. Wood received a final written warning for unprofessional behavior towards another co-worker. When you say documented, Mr. Guevara, you're talking about the ones that were written up reports that she signed? Yes, your honor. And so are those, do those stand as acknowledgements of the facts contained in those documents? Yes, your honor, we believe they do. So they, your argument is evident from an evidence standpoint, they would stand by themselves without corroborating evidence. Yes, your honor, their business records of the employer and the, um, uh, and, and the, the board of review typically will consider those as part of the entire record. And in fact, the administrative law judge indicated that he had reviewed those as part of the, as part of the record. Okay, well, the credibility determination of those documents then is not an issue then, is that correct? That's, yes, we believe that's correct. Okay, thank you. In her final warning, in her, in, in July 15th warning or July 5th, 2017 warning, uh, she was set, told Ms. Wood is receiving a final written warning as a result of her misconduct. KBI will not tolerate any further unprofessional behavior on the part of Ms. Wood and any further incidents of misconduct or harassment will result in immediate termination. On March 1st, 2018, Ms. KBI terminated her employment for ongoing involvement in a hostile and disruptive, disruptive work behaviors. Well, my question is, and it seems like this case respond, what's the role that the prior non-credibility questioned documentation has to play? Because it seems like the final notice says you, you know, if you do one more thing or a couple more things, then you're going to be fired. And now the question is, the board was looking at that, that point in time going ahead as to whether those were credible incidents, right? I don't, I don't think there was any dispute in the record that the prior warnings had been given. I don't think there was any dispute in the record that there was a final, that she was on a final written warning. The focus of the, of the further documented incidents. Correct. July 7th, after July 7th. Correct. Okay. And so it seems like the case rests or falls primarily upon whether those are believable incidents. You're, you're, you're saying the prior incidences are believable. Is that what you're saying? You already said that they were and opposing council may or may not agree with that in his say that they're not, there's no credibility determination to be made. They're acknowledged. They're basically stipulated facts, so to speak by the employer and employee. But now we've got a final notice and the final notice says further behavior will not love this nature will not be tolerated. And so now it seems to me whether her termination was appropriate or not, uh, is a determination of what took place from July 7th on. I think that's fair, your honor. And I think that's where the rub is because the administrative law judge in considering the evidence made the determination that there had been that, that, that Ms. Wood had been warned orally by management about her ongoing, disrespectful, disruptive conduct. And he also made the determination that, um, in one particular incident where he, where she said to a direct supervisor, Carlos Mullins, the man, the operations manager, and please forgive my language. I think it's, it's, it's in the record. She said that that's bullshit. And he found that to be this positive in terms of a final incident. Um, he didn't consider the other evidence of, uh, that was hearsay evidence of the other concerns that had been brought to Mr. Mullins that were certainly part of his employment decision relating to, um, complaints by other employees. But he did indicate that that particular incident was, was sufficient, um, particularly given her prior warnings and given the fact that she had been counseled, um, that the review board in making their decision did not consider at all any of the prior written warnings that had been given, did not consider at all, or even acknowledge that she was on a final written warning, did not consider or in any way reference the fact that there were ongoing counseling with her, oral counseling with her, and did not consider or even reference the interaction with Mr. Mullins that he testified to that the ALJ found to be credible of making that, that inappropriate comment directly to him. Okay, then let's start looking at the board. The board is the one that makes the credibility findings that are binding, right? On review. Okay. Uh, and that after July 7th behavior was disputed by the employee in face of the employer's testimony of Reborn and Mullin about two incidents which they would be arguably competent to testify to and could not be thrown out as hearsay. Is that the status right at that point? I believe that's correct. Okay. But I would add, I'm sorry. Yeah, but the problem now is we're trying to, or you're not we, or you are trying to reverse the board's findings, correct? I don't believe I am, your honor. I believe that, that my point simply is that the responsibility of the review board is to consider the record as a whole. And the review board did not make a determination that, that, that, that, that the, that's bullshit comment did not happen. The review board did not make a determination with respect to the prior written warnings. The review board simply said, oh, you should have called more witnesses. And, but, but, but there wasn't a ruling one way or the other about the issues that the, that the administrative law judge very directly and discreetly responded or addressed. And I would argue that, that the, the record that, that the ALJ's decision, which has not been overturned from an evidentiary perspective. In other words, there wasn't any, any, any, the review board didn't say, well, the ALJ was wrong. The review board simply ignored that evidence. And that's what's, that's what's troublesome in this case. The review board also said very specifically that there was an expectation that she should have received additional written warnings. I mean, that was one of the very specific statements that they made. This is, this was the review board's decision. Surely Mr. Mullins could have written the claimant up any number of times for her alleged insolence and insubordinate, insubordinate behavior, but he did not. Contemporaneous documentary evidence in the form of written warnings or discipline action, disciplinary actions would have confirmed the event really took place. This is not an onerous burden to place on the employer. Most employers document bad behavior. That's the point. They, they criticized KBI for not documenting bad behavior when the, when, when she was on a final written warning that followed five prior written warnings. So they just simply either didn't review the record or just didn't in any way acknowledge that in fact, that was exactly what had happened. She, what she had, this is your real concern for future cases is that if an employer, I think that's what you're saying. If an employer sends a, or gives the employee a final written notice that the board is not going back and looking at prior documented undisputed evidence, but that they're focusing only from that point forward, what happened? Is that what you're trying to say? I think that's true. I mean, if the, if the employee had challenged the prior written warnings, then there may have been an issue there, but there was no challenge of that. There was no dispute that she was on a final written warning. There was no dispute that the next incident could lead to termination or would lead to termination. And so I think my concern, my concerns are the, that this decision puts a, puts new onerous burdens on employers that have not been, that are inconsistent with what this court and the, and the Illinois Supreme Court have held in prior cases. The, the alternative staffing case says that once an employee has received a series of warnings, if there's another incident, even if, even if it's excusable, that can be the basis for misconduct and can disqualify, can disqualify the employee from receiving benefits. We're also very troubled, your honors, about the, what I think is perhaps the most significant public policy perspective for this case, which is the fact that the review board specifically criticized KBI for not calling more witnesses. The public policy of this state favors the simplicity and the efficiency of administrative proceedings. The Department of Employment Security in particular is under a huge amount of pressure to evaluate a large number of benefit claims as efficiently as possible. Judge Ott, the ALJ in this case, at the beginning of the hearing said, I just want to remind everybody we have 30 minutes. It's a, it's, it's not, this is not the time for a full-blown jury trial. This is a limited administrative hearing to gather core evidence so that the judge can make a decision. KBI called two witnesses, two witnesses. They called the human resources manager who testified about her interactions with Ms. Wood. And, and then they called Carlos Mullins, the operations manager who testified about all of his interactions with her, including that, one final incident that, that, that Judge Ott found dispositive. But you're not, you're not, you're not arguing the hearsay objection was in error, are you? I'm not. I'm not because, because, but, but what I am saying is that, is that by, by making the point that the review board said, if the claimant was as bad an employee as the two other employer witnesses testified, surely her two managers would have been aware of it. Well, Carlos Mullins was one of her managers. Why would the employer have to call three different supervisors to testify with respect to the same facts? That it, that there's nothing in the act that says, no, you have to call more witnesses. You have to create new additional documents. You have to engage in this further progressive disciplinary process. At some point, the employees on the final written warning, there's another incident that occurs, that's the end. And, and to put that type of burden on an employer that's trying to run its business, that's trying to, you know, continue to productively provide, provide work in the state. It's really a troublesome burden to suggest that employers have to provide, have to call cumulative witnesses to provide cumulative evidence in order to, to, to establish misconduct in a, in a well-documented case. So I think just, I think I'm, I'm getting closer out of time here, but I'm reading the back side of two minutes. Yes. Okay. So I guess what I would say is, your red light is on. You'll have time and reply. Thank you. Okay. Thank you. Okay. Mr. Rush. Thank you, your honor. May it please the court. My name is Caleb Rush and I am here on behalf of defendants, appellees, the Illinois department of employment security board of review and the director of the Illinois department of employment security. There's no reason to reverse the board's findings or its ultimate decision in this case. Now on administrative review before this court, it's a very simple case. The board's factual determinations must stand as long as there is some evidence to support them. Here, there was evidence on both sides that the board's was disputed. In particular, it was disputed as to whether Ms. Wood engaged in any misconduct in the last five or six months of her employment, which is what Ken's beverage claims it discharged her for. This court does not reweigh the evidence. This court does not reevaluate credibility determinations and those credibility determinations may be implicit. So after the board reviews the entire record, if some evidence supports the board's decision, there's no basis to reweigh or reevaluate the other side's evidence attempts to weigh how those pieces of evidence might weigh against each other. That was the province of the fact finder. And so there's no there's no basis to reverse the board's decision. In particular, I want to emphasize something about what is disputed or undisputed here. Justice Holdridge, you brought up the past warnings dating from nine months prior to many years prior. They don't actually on their face represent an acknowledgment of the truth of anything. If you look at the bottom of the form, for instance, on page 96 of the common law record, it says I acknowledge that I have received this form. So they don't on their face represent any kind of undisputed facts that the board was was required to find were true. But in any event, the issue in this case is whether Ms. Wood was discharged for committing misconduct. Ken's Beverage claims that it did discharge her for engaging in a pattern of misconduct during the last five or six months of her employment. That evidence is disputed. The board was not persuaded. So you're saying that it is the time frame from July 7th forward that was the claim of pattern of misconduct, and there was a failure to establish that pattern by the employer? Yes, your honor. That's exactly right. Although I would offer one caveat. Ken's Beverages claim in the form that it gave Ms. Wood in March was that it was a pattern of behavior from November of 2017 forward. And that that was the basis for discharging her. I don't think it matters a whole lot for the purposes of administrative review, whether that time frame was the prior five or six months or the prior nine months. Looked at in either way, there's evidence on the record looking at the entire record, which the board did and said it did in its decision. Looking at the entire record, there's evidence supporting the board's factual findings and its ultimate decision. So you're saying that the characterization that the prior documents signed by Woods was not a stipulation as to the facts, the occurrence, whether it happened or not, but just that she had received a complaint, so to speak, or is a documentation of a complaint by the employer regarding her behavior, right? Yes, your honor. That is what we're saying. And I say that simply based on the text of the form itself. By the way, Ken's Beverages has these various mostly years old forms that Ken's Beverages submitted. I'm looking at one of them right now. If Ken's Beverages had brought this up in either of these briefs, I would have taken a closer look at all of the forms. But I'm looking at one of them right now, and that's on page 96 of the record. It says, I acknowledge that I have received this form and that it has the employee So you're saying that the board was correct in your view that these documents needed to actually be authenticated, so to speak, through other evidence or testimony for them to have the weight of this misconduct had occurred? No, I wouldn't say that that's our position, your honor. It may very well be that these documents could be admissible as business records. But what I am saying is that they address facts that happened at least nine months prior to Ms. Wood being fired. Most of them address facts that are pattern. Is there any time statute on the limitations on a pattern of misconduct? No, there's definitely no time statute limitations on a pattern of misconduct. Rather, it's the province of the fact finder, the board, to look at the entire record and resolve disputes. And if there is disputed evidence, as there was here, then when the board makes its determination, there's no basis to reverse that on administrative review. Okay, so our standard of review, you're saying is manifest way to the evidence with the well-worn statement that if there's anything in the record that would support the board's decision, we have to pay deference to that. Okay, right. Fair statement, I think. Yes, your honor. Okay, but where does clearly erroneous come in? It's characterized often as a least less deferential standard of review. Thank you, your honor. I appreciate the point. Manifest way to the evidence applies to factual findings. And we're talking about things like credibility findings. These are findings that can be implicit. When it comes to the facts, the standard of review is manifest way to the evidence. And if there is some evidence in the record to support the board's factual findings, they cannot be reversed. Clearly erroneous comes into play or clear error when the board applies the facts to a legal standard and makes a determination. So the ultimate question of whether Ms. Wood was discharged for misconduct, that's a determination that applies factual findings to a legal standard. It's subject to review for clear error. But that has to be looked at with regard, pardon me, that has to be looked at with regard to, well, what were the board's factual findings? What were its credibility determinations, whether explicit or implicit? And by the way, there's no legal authority requiring the board to address every single claim explicitly or to address every single piece of evidence explicitly. Council here is talking about the value of efficiency in these proceedings, but seems to be arguing without any legal authority whatsoever for a new standard that requires the board to address every single little item. And that's simply not how these decisions are reviewed. So when we start with what the board's factual findings are, and the board here was not persuaded by Ken's Beveridge's evidence that of any pattern of misconduct, let alone a single incident of misconduct in Ms. Wood's final five or six months of employment, then we get to a clear error review for the question of whether she was discharged for committing misconduct. Well, if the factual findings are, excuse me, are that Ken's Beveridge's evidence was not persuasive, then you can't have a clear error in that ultimate determination. Mr. Rush, I have a question. Yes, Your Honor. We've talked about the standard of review for our court. And, you know, we've talked about how we have to relate to the decision of the board. What is it that Ken's Beveridge had to show at the level of the hearing before the ALJ, for example? Does it have to show only that it believed that there was a pattern of misconduct and that there is some evidence in the record from which one could legally determine that that was a reasonable finding, or do they have to prove that the board would have determined that there was misconduct? What is it that the claimant, not the claimant, has to prove? Ken's Beveridge had to prove more than just its subjective state of mind, especially whereas here there was a hearsay objection. Ken's Beveridge had to offer some competent evidence to support its fundamental claim that Ms. Wood engaged in misconduct during her final five or six months of employment, and that that was the reason it fired her, because people, you know, sometimes can be fired for other reasons even if they may have transgressed in some way. And it's limited to five or six months because of what Ms. Rebhorn said in that, what's it called, employee counseling form in July? Why is it limited to five or six months? That was the claim that Ken's Beveridge made, and so that was what the board looked at. Now, if Ken's Beveridge made the claim, no, we only discharged her for conduct that Ms. Wood committed nine months or years in the past, you know, then the board could look at that too. And the board did look at those earlier warnings. It looked at the entire record and it commented on the one from July of the prior year. I think counsel stated a few minutes ago that the board did not acknowledge any of these earlier warnings, and on the face of the board's decision, that's not accurate. So, as a matter of law, it's theoretically possible to look at these things, but the board as the fact finder has to look at all the evidence, and it's understandable if the board is not persuaded that Ms. Wood was fired for things that she did nine months or years earlier. And then when Ken's Beveridge says that there was a pattern of misconduct during the course of the last five or six months, and that that's what she was fired for, and then there's little or no competent evidence to show that that actually occurred, that's why the board said it was not very persuaded. Well, I'm still confused by this, Mr. Rush, that we're kind of never really answering the question here. Are you not, in most legal proceedings, bound by the four corners of your complaint? And so what are the four corners of the complaint of the employer? You said, is it from your misconduct after July 7th? Or is it prior to July 7th, where these documented acknowledgements of being warned came into play? In this administrative proceeding, there's not a complaint that sets the four corners of what's in dispute, but the board as fact finder looks at the entire record and has to make an ultimate decision. Was Ms. Wood discharged for misconduct? And there's nothing inappropriate about the board evaluating that question in the light of Ken's Beveridge's own expressly stated claims, which is Ms. Wood was discharged for engaging in a pattern of misconduct in the final five or six months of her employment. I'd also like to add that... Well, that kind of is, you know, the four corners of the claim. They're setting a boundary over the pattern of misconduct during the five or six months. The board did not set a boundary on that as a matter of law. Rather, the board evaluated the entire record and fairly considered what Ken's Beveridge itself was claiming. Okay, your time is up. The red light came on, Mr. Rush. Thank you. Thank you, Your Honor. Mr. Guevara, you may reply. Yeah, a couple of things, Your Honor. First, with respect to the standard of review, the manifest way to the evidence applies to the factual findings. The clear error standard would apply to the mixed questions of fact and law. As I read the board's decision, review board's decision, I see one paragraph of factual findings. Everything else goes to weight of the evidence and legal analysis. There's not factual findings. The third paragraph, which begins, the employer is a Beveridge distributor and explains when she worked and why she was discharged. That, to me, is the only thing that I believe are factual findings in the case, which again goes back to our greater concern. With respect to the issue of whether or not she was under these prior written warnings, they were clearly in evidence because they're a part of the administrative record. One of the burdens of the employer is to show that the employee was on notice of the employer's reasonable expectations. Those warnings consistently establish, including the final written warning, the notice that she was on regarding her behavior. In addition, the oral conversations that she had with Mr. Mullins and with Ms. Ravborn, again, that the ALJ made a determination on but the review board didn't address at all, also established the notice of the employer's reasonable expectations. I think that, again, when we look at the entire record, when we look at all of it, it just seems apparent that the review board just simply didn't do that. They didn't spend the time to really understand the history of misconduct. The fact that they say, well, Mr. Mullins should have written her up again, that this court has held that there's no requirement of progressive discipline in the state of Illinois. The issue is, did the employee have notice and were they terminated for a reason upon which was a violation of a rule or an expectation of the employer? That is exactly what happened here. But do they find implicitly that that was not credible, Mullins and Ravborn's testimony was not credible because it was responded to by Woods herself? It's difficult. I think it would be speculative to say that because we don't know because they one paragraph, three lines, where there's an actual conversation, actual factual findings, and what it specifically says is the claimant was discharged because her immediate supervisor and her subordinates complained numerous times to the employer about her behavior and management style. That's what it says. After that, everything is about the employer's failure to provide further written warnings, failure to call additional witnesses, no discussion of the actual substantive evidence or the analysis of the administrative law judge or the evidence but I would add this. During the hearing on administrative review, it was interesting because Judge Anderson, he made the comment that if he had been on the board of review, he was certain that he would have reached a different conclusion. He was reluctant to overturn that decision and yet he acknowledged that it was evident from the record that that was the only reasonable conclusion was that she was discharged for misconduct and I think that's what's troublesome. The review board putting additional burdens on employers, not recognizing the limited scope of these hearings, not understanding the dynamics of the burden it placed on employers to have to call multiple witnesses and to present cumulative evidence and to continue to document misconduct even after it's been very clearly documented. To me, that's the real problem in this case and that's the essence of clear error. Okay, thank you Mr. Guevara and Mr. Rush for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue. Thank you, your honors.